120 So.2d 917

Tommy GLASS

v.

STATE.

6 Div. 742.

Court of Appeals of Alabama.

May 24, 1960.

Roger F. Rice, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Winston Huddleston, Supernumerary Circuit Sol., for the State.

HARWOOD, Presiding Judge.

This appellant stands convicted of assault with intent to murder. The victim of the assault was Mr. S. R. Wallace.

It is clearly inferable from the evidence that the shooting of Mr. Wallace by the appellant grew out of a family row, Mr. Wallace's son, Clifton, being married to the sister of the appellant. This marriage apparently has been beset with trials and tribulations.

The evidence presented by the State tends to show that the appellant drove into the yard of Mr. Wallace's home in rural Jefferson County on the afternoon of 28 March 1959. Clifton, the son of Mr. Wallace, and the husband of the appellant's sister, was then residing in Mr. Wallace's home.

When Mr. Wallace greeted the appellant the appellant informed him he had come to Mr. Wallace's house to kill Clifton. Mr. Wallace told him he didn't think he would. About this time Clifton, who suffered from defective sight, emerged from the back door of the home. Mr. Wallace turned, walked to Clifton and pushed him back into the house. As he turned around the appellant fired upon him twice with a shotgun from a distance of about 25 feet. The appellant testified that the barrel of the shotgun had been sawed off. The appellant was struck by pellets from his forehead well down onto his legs and was hospitalized several days as a result of these wounds.

After being shot Mr. Wallace went into his house, procured his pistol and shot at the appellant several times, striking the appellant's automobile.

A man named Tommy Vest, who had accompanied the appellant to Mr. Wallace's testified in behalf of the appellant.

Vest testified that as they drove up to Mr. Wallace's yard the appellant told Mr. Wallace he would like to talk to him. Mr. Wallace said "All right." At this time Clifton came out of the house and Mr. Wallace said, "Just a minute," and escorted Clifton back into the house. Then Mr. Wallace returned to the back door of the house and started shooting at the appellant.

Vest further testified that he met appellant at a roadhouse and appellant informed him he was going turkey hunting. Vest asked to go along, and they were on their way to a field to hunt wild turkeys when the appellant said he wanted to go by Mr. Wallace's for a minute. According to Vest they did go on and hunt turkeys after the shooting at Mr. Wallace's. They had no turkey callers with them and according to Vest the hunt was in a field around 4 o'clock in the afternoon.

The appellant did not testify in his own behalf.

■ The conflict in the evidence presented by the respective parties raised a question of fact solely within the province of the jury to resolve.

Vest was the main witness for the appellant. If any of the jurors were in any wise familiar with turkey hunting, their confidence in Vest's testimony undoubtedly was weakened by his account of the turkey hunt allegedly engaged in by him and the appellant on the afternoon in question.

During his cross-examination Mr. Wallace had testified that after appellant had declared his intention to kill Clifton he told him: "You have been in enough trouble already"; "You had better put that gun up and go on home"; and "You are asking for some more trouble now."

The record then shows the following:

"Q. Did you mean by that you were going to shoot him?

"Mr. Deason: Don't answer that.

"A. No.

"The Court: Sustained.

"Mr. Rice: We except."

■ The above incident is set forth in counsel's brief as constituting error. We do not accord to counsel's contention in that despite the solicitor's direction to the witness not to answer defense counsel's

question, the witness did answer. While the court thereafter announced "Sustained," we do not consider that such action by the court had the effect of excluding the answer already before the jury. There is therefore nothing before us for review.

During the cross-examination of State's witness Clifton Wallace, the court sustained the State's objection to the following question:

"Q. Now you and your wife were having a lot of trouble there at that time, weren't you?"

■ No error resulted from this ruling. The question is faulty in assuming that witness and his wife were having a lot of trouble. Butler v. State, 16 Ala.App. 234, 77 So. 72; Doody v. State, 22 Ala. App. 289, 115 So. 66; Allen v. State, 26 Ala.App. 218, 155 So. 894. Further, the question is vague and indefinite in the use of the phrase "a lot of trouble there at that time."

Also, during the cross-examination of Clifton Wallace the court sustained the State's objection to the following question:

"Q. And this trouble grew out of the fact that there was some issues between you and your wife, you and the Glass family is what this trouble started over, wasn't it?"

■ No error resulted from the sustension of the objections in this instance. The question is infected with the same faults as was the preceding question, that is, assumption of facts not in evidence; vagueness. In addition, it is a double question and faulty in this aspect. See Rogers v. State, 16 Ala.App. 58, 75 So. 264.

■ The court likewise did not err in sustaining the State's objection to a question propounded to Clifton Wallace on cross-examination as to how his father obtained custody of the three older children of the marriage of Clifton and his wife. The evidence sought was immaterial and irrelevant to the issues and could shed no light thereon.

During the cross-examination of State's witness, Mr. Wallace, defense counsel, made extensive use of hospital records in examining Mr. Wallace as to his stay in the hospital after he had been shot.

On re-direct examination the Solicitor offered the hospital records in evidence, and defense counsel objected to their reception. The record then shows the following:

"Mr. Deason: All right, it is all right with us if he doesn't want it to go in, it is all right with us.

"The Court: You brought it here didn't you?

"Mr. Deason: Yes, sir.

"Mr. Rice: Yes, sir, but I didn't introduce it, may it please the court.

"The Court: All right.

"Mr. Deason: We have offered it, if he doesn't want it to go in, it is all right with us.

"The Court: All right, all right."

The result of the above colloquies of course was that the hospital records were not received in evidence. Counsel, however, complains that the court's question as to whether defense counsel had not brought the record to court created an inference that the appellant had failed to use certain evidence, wherein said evidence was equally available to both sides. Counsel argues that under the doctrine of Kissic v. State, 266 Ala. 71, 94 So.2d 202, 67 A.L.R.2d 530, the above question by the court should cause a reversal of this judgment.

■ The remarks of the court in the Kissic case, supra, were excepted to, whereas no exception was reserved in the present case. This, we think, precludes further review.

■ Charge C was properly refused being invasive of the province of the jury, argumentative, and abstract.

Charge L was abstract under the evidence, elliptical, and otherwise faulty. It was properly refused.

Charge M was covered by other given charges and the oral charge of the court. No error therefore resulted from its refusal.

Other matters are argued in appellant's brief. They are palpably without merit, and we refrain from a discussion of them.

Affirmed.